### Charles Krueger, Plaintiff in Error, v. The People of the State of Illinois, Defendant in Error.

#### Gen. No. 13,915.

1. WORDS AND PHRASES—*when "have" equivalent of "had"*. *Held*, that the word "have" used in an indictment returned under the gambling statute was, from the context, the equivalent of "had".

2. PLEADING—*when defect in form of indictment must be availed of*. A mere technical or clerical error pertaining to a matter of form must be availed of by motion to quash.

Proceeding by information. Error to the Municipal Court of Chicago; the Hon. E. K. WALKER, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed June 11, 1908. Rehearing denied June 22, 1908.

EDWARD H. MORRIS, for plaintiff in error.

JOHN J. HEALY and F. L. BARNETT, for defendant in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

An information was filed in the Municipal Court of Chicago in which it is averred as follows:

"That Charles Krueger, late of the city of Chicago,

heretofore, towit: on the 24th day of July, A. D. 1907, at the city of Chicago aforesaid, unlawfully and knowingly have in his possession for the purpose of gaming a certain writing and paper and document representing and being a record of a chance share and interest, in numbers drawn and to be drawn and which papers, writing and documents aforesaid is commonly called policy and in the nature of a bet, wager and insurance upon the drawing and drawn numbers of a public and private lottery in violation of sections 185A, 185B and 185C of chapter 38 of the Revised Statutes of this State of Illinois—contrary to the form of the statute in such case made and provided.''

The defendant pleaded not guilty. The jury found him guilty, and the court, after overruling motions for a new trial and in arrest of judgment, sentenced the defendant to imprisonment in the House of Correction of the city of Chicago for three months, and to pay a fine of $500 and the costs.

The information is filed under section 2 of ''An Act for the prevention of Policy playing,'' in force July 1, 1905, Hurd's Rev. Stat. 1905, p. 709, which section is as follows:

''A person who keeps, occupies or uses, or permits to be kept, occupied or used, a place, building, room, table, establishment or apparatus for policy playing or for the sale of what are commonly called 'lottery policies,' or who delivers or receives money or other valuable consideration in playing policy, or in aiding in the playing thereof, or what is commonly called a 'lottery policy,' or for any writing, paper or document in the nature of a bet, wager or insurance upon the drawing or drawn numbers of any public or private lottery; or who manages or promotes any 'lottery policy,' or the game commonly called 'policy,' or who shall have in his possession, knowingly, any writing, paper or document, representing or being a record of any chance, share or interest in numbers sold, drawn or to be drawn, or in what is commonly called 'policy,' or in the nature of a bet, wager or insurance, upon the drawing or drawn numbers of any public or pri-

vate lottery; or any paper, print, writing, numbers, device, policy slip, or article of any kind such as is commonly used in carrying on, promoting or playing the game commonly called 'policy'; or who is the owner, agent, superintendent, janitor or caretaker of any place, building or room where policy playing or the sale of what are commonly called 'lottery policies,' is carried on, with his knowledge, or who aids, assists, or abets in any manner, in any of the offenses, acts or matters herein named, shall upon conviction for the first offense be confined in the county jail for not more than one year, or be fined not less than two hundred dollars nor more than one thousand dollars, or both; and upon conviction for the second offense be imprisoned in the penitentiary not less than one year nor more than two years."

Counsel for defendant objects that the word *had* should have been used in the information, instead of the word "have," next after the word "knowingly," or else that the word *did* should have been used next after the words "Chicago aforesaid," and that the information as drafted is fatally defective. The use of the word "have" instead of had is clearly a mere clerical error, and it is evident that past time was intended by the pleader, because the information was filed July 25th, and the time averred under a *videlicet* is July 24th. We regard the objection as purely technical, which could have been taken advantage of, if at all, by motion to quash, which motion the defendant did not make, but pleaded not guilty and went to trial on the merits. It is now too late to make the objection. Section 9 of Division 11 of the Criminal Code provides: "All exceptions which go merely to the form of an indictment shall be made before trial, and no motion in arrest of judgment shall be sustained, for any matter not affecting the real merits of the offense charged in the indictment." Hurd's Rev. Stat. 1905, p. 743. See, also, Curtis v. The People, Breese 256; Brennan v. The People, 110 Ill. 535.

It is further contended that the information is de-

fective in substance, in omitting the word *sold* next after the words "interest in numbers," so that the reading would be, "interest in numbers sold, drawn and to be drawn." This objection arises, as we think, from a misconstruction of the statute. The language and punctuation of the statute are: "or who shall have in his possession, knowingly, any writing, paper or document, representing or being a record of any chance, share or interest in numbers sold, drawn or to be drawn, or in what is commonly called policy," etc. Counsel construes this language as referring exclusively to numbers sold; but we think the section refers not only to numbers sold, but to numbers drawn or to be drawn; that the language is elliptical, and that supplying the understood words, the reading would be, "or who shall have in his possession, knowingly, any writing, paper or document, representing or being a record of any chance, share or interest in numbers sold, or in numbers drawn or to be drawn, or in what is commonly called policy," etc.

The evidence is that police officers Hardy and Hall went to the defendant's place, in the city of Chicago, about twelve o'clock noon, July 24, 1907, and found there six persons, the defendant not then being present; that some of the persons present talked about having made a bet that morning; that shortly before one o'clock P. M. the defendant came in and said he was a little late, but everything was all right, and he put his hand in his pocket and drew out certain slips and distributed them to the persons there, other than the officers, when those persons started to leave the place and the officers followed them, arrested them, and took from them the slips which the defendant had given to them. One of each of three kinds of these slips was put in evidence, each slip having numerous numbers on it. Officer Hardy testified that he knew how the game of policy was played, and gave a lengthy explanation of how it is played, and testified that the slips were records of drawings, and it appears from his evidence

that a record of the drawings is a necessary part of the game.

We find no error in the giving or refusal of any instruction, or in the record.

The judgment will be affirmed.

*Affirmed.*