· Hodgkiss *v.* State.

## Opinion delivered January 8, 1923.

1. CRIMINAL LAW—FAILURE TO FILE BRIEF IN FELONY CASE.—On appeal by one convicted of a felony, the Supreme Court will consider the whole of the record to discover grounds for reversing the judgment, though the accused has filed no brief.

2. INTOXICATING LIQUORS—SUFFICIENCY OF EVIDENCE.—Evidence *held* to sustain a conviction for violation of the statute against setting up a distillery for the purpose of using the same.

3. ˙CRIMINAL LAW—MOTION IN ARREST.—Failure of an indictment to charge the material elements of a public offense may be taken advantage of by motion in arrest of judgment.

4. INTOXICATING LIQUORS—SUFFICIENCY OF INDICTMENT.—An indictment alleging that defendant "did set up a certain trough as a substitute for a still, for the purpose of using same for the production of distilled spirits and alcoholic liquors" was not sufficient to charge the setting up of a complete still for the distillation or production of alcoholic liquor.

5. ˙CRIMINAL LAW—DISTILLATION—MATTER OF COMMON KNOWLEDGE.— It is a matter of common knowledge that the distillation of ardent spirits is a process consisting in the evaporation of fermented liquids and the liquefaction of the vapors by condensation; the evaporation being produced by heating to a˙boiling point, and condensation of the vapor being brought about by passing the vapor through a metal tube or coil submerged in · cold water.

6. INTOXICATING LIQUORS—"STILL" DEFINED.—The word "still" is sometimes applied to the whole apparatus for evaporation and condensation used in the manufacture of ardent spirits, but in the description of the parts of the apparatus it is applied merely to the vessel or retort used for boiling and evaporation of the liquid.

7. INTOXICATING LIQUORS—"STILLWORM" DEFINED.—The words "stillworm" apply to the tube or coil used for the condensation of the vapor.

8. INTOXICATING LIQUORS—STATUTE CONSTRUED.—The first part of § 2 of Acts 1921, No. 324, makes it an offense to have in possession either a "stillworm" or a "still" without registering same, and this regardless of the purpose of having them in possession; but the language of this part of the statute is used in a technical sense as relating to apparatus subject to registration and made for use only in the distillation of liquors, and it was not intended to apply to any vessel which might be used as a retort for the use of boiling liquid for evaporation.

9. INTOXICATING LIQUORS—STATUTE CONSTRUED.—The latter part of § 2 of Acts 1921, No. 324, relates to the setting up of apparatus for use as a complete distillery, technically speaking, or to any substitute therefor which, after being set up, may be used for the production of distilled spirits.

Appeal from Madison Circuit Court; *W. A. Dickson*, Judge; reversed.

No brief for appellant.

*J. S. Utley*, Attorney General, *Elbert Godwin* and *Wm. T. Hammock*, Assistants, for appellee.

McCULLOCH, C. J. The indictment in this case reads as follows, omitting caption and formal parts:

"The said George Hodgkiss, in the county of Madison, in the State of Arkansas, on the 10th day of June, 1921, feloniously did set up a certain trough as a substitute for a still, for the purpose of using same for the production of distilled spirits and alcoholic liquor, against the peace and dignity of the State of Arkansas."

There was a trial, which resulted in a conviction, and appellant filed a motion for a new trial, and also a motion in arrest of judgment, on the ground that the indictment failed to state facts sufficient to constitute

a public offense. Both motions were overruled, and an appeal has been duly prosecuted, all of the exceptions saved during the trial being presented in a bill of exceptions.

No brief has been filed on behalf of appellant, but the conviction being a felony, it becomes our duty to consider the whole of the record to discover grounds for reversing the judgment, if any are shown therein.

Without discussing the various assignments of error set forth in the motion for a new trial, it is sufficient to say that none of them calls for a reversal of the judgment.

The principal assignment relates to alleged insufficiency of the evidence. The sheriff of the county testified that he went to appellant's home and there found in his possession several bottles and jars containing whiskey, secreted under the floor, two barrels of fermented mash in a barn, suitable for use in the distillation of alcoholic liquors, a wooden trough in a barn, with a hole in the end, and one or more metal pipes secreted in the bushes near by, and two blocks of wood with a hole through each of them about the size of the pipes. The trough was six or eight feet long and about six inches wide. The blocks of wood had flour dough on them. These circumstances warranted the jury in finding that appellant had in his possession an improvised still, temporarily disconnected, but that the same had been set up complete for the distillation of whiskey, and that appellant had been using the same for that purpose. It was sufficient to sustain a conviction for violation of the statute against setting up a distillery for the purpose of using same. *McGarity* v. *State,* 151 Ark. 423.

The question of the sufficiency of the indictment is more serious. If it failed to charge the material elements of a public offense, the defects can be taken advantage of by motion in arrest of judgment. *State* v. *Keith,* 37 Ark. 96; *Beard* v. *State,* 79 Ark. 293; *McIntire* v. *State,* 151 Ark. 458.

The indictment was intended to charge a violation of one of the sections of act No. 324 of the Legislature of 1921. Acts of 1921, p. 372. The first section of that statute has no application to this case, for it declares the making or fermentation of mash, wort, or wash fit for distillation or manufacture of wine, beer, or other alcoholic liquors to be an offense. The next three sections read as follows:

"Sec. 2. No person shall keep in his possession any stillworm or still without registering the same with the proper United States officer, and no person shall set up to be used as a distillery any stillworm or substitute therefor, and a still or substitute therefor, such as a kettle, washpot, metal tank, or any other vessel of any kind, for the purpose of using same, or which, after being so set up, may be used for the production of distilled spirits.

"Sec. 3. No distillery shall be set up in this State for the purpose of manufacturing distilled spirits for beverage purposes, and no distillery shall be used in the manufacture of such spirits. Any device or any process which separates alcoholic spirits from any fermented substance shall be regarded as a distillery.

"Sec. 4. No person shall manufacture a stillworm or still without first having qualified under the laws of the United States as a manufacturer of stills and without paying the tax required by the laws of the United States on the still and worms manufactured. Any person who converts a kettle, washpot, metal can, tank, barrel, or other vessel into a still, or who converts any metal pipe of any kind into a stillworm or a condenser for a still, shall be deemed to be a manufacturer of stills."

The language of the indictment is not sufficient to charge the setting up of a complete still for the distillation or production of alcoholic liquor. It merely charges the setting up of "a certain trough as a substitute for a still for the purpose of using same," etc.

The primary purpose of this statute—at least of the three sections now under consideration—is to prevent the production of distilled alcoholic liquor, and, in order to properly understand the meaning of the various provisions, it is well to consider the ordinary method of such production, the several parts of the apparatus used for that purpose, and the definition of the words describing them.

It is a matter of common knowledge that the distillation of ardent spirits is a process consisting in the evaporation of fermented liquors and the liquefaction of the vapors by condensation. The evaporation is produced by heating to a boiling point, and condensation of the vapor is brought about by passing the vapor through a metal tube, or coil, submerged in cold water. The word "still" is sometimes applied to the whole apparatus for evaporation and condensation, but in the description of the parts of the apparatus it is applied merely to the vessel or retort used for boiling and evaporation of the liquid. Webster's Dictionary.

The word "stillworm" applies to the tube, or coil, used for the condensation of the vapor.

Now, it is easily seen that § 2 of the statute is divisible into two parts, the first making it an offense to have in possession either a stillworm or a still without registering the same—this regardless of the purpose of having them in possession. *McIntire* v. *State, supra.* It is manifest that the language of this part of the statute is used in a technical sense as relating only to the apparatus subject to registration and made for use only in the distillation of liquors. Any metal pipe can be used as an improvised method of condensing vapor in the distillation of spirits, but it was certainly not intended by the lawmakers to penalize the having of such an article in possession. Any kind of metal vessel can be improvised as a retort for use in boiling liquid for evaporation, but it was not intended to constitute an offense in having possession of such a vessel.

The latter part of § 2 relates to the setting up of the apparatus for use as a distillery, and the thing or things set up must be susceptible of that use. A still-worm cannot alone be used as a distillery, neither can a "kettle, washpot, metal tank, or any other vessel" alone be so used. The language relates to a complete distillery, technically speaking, or to any substitute therefor, "which, after being set up, may be used for the production of distilled spirits." It will be observed that the words, "any stillworm or substitute therefor," are conjunctively joined with the words, "a still or substitute therefor," which bears out the interpretation that, in order to constitute an offense under this part of the statute, the apparatus set up must be complete so that it may be used for the production of distilled spirits. This part of § 2 of the statute, and § 3 thereof, overlap to some extent in effect, but an indictment may be framed in the language of either. The indictment in this case was intended to state an offense under the latter part of § 2, but it merely charges the setting up of "a certain trough as a substitute for a still, for the purpose," etc. It does not charge the setting up of a worm in connection with the still, nor that the trough was a thing, "which, after being set up, may be used for the production of distilled spirits." A trough may be fit for use as a part of the apparatus for the distillation of spirits, but it cannot alone be used for that purpose.

Our conclusion is that the indictment does not charge a public offense.

Reversed and remanded for further proceedings not inconsistent with this opinion.