STATE of Arkansas *v.* Billy Wayne HAVENS

CR 98-1468                                    987 S.W.2d 686

Supreme Court of Arkansas
Opinion delivered March 25, 1999

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellant.

*Marianne L. Hudson*, for appellee.

RAY THORNTON, Justice. Appellant State of Arkansas appeals the judgment of the Washington County Circuit Court dismissing charges against appellee Billy Wayne Havens for violation of the Arkansas Hot Check Laws. The trial judge granted appellee's motion to dismiss the charges against him on the grounds that he had not received notice of the dishonor of his checks pursuant to Ark. Code Ann. § 5-37-303 (Repl. 1997). On appeal, the State argues that the trial court erred in reading compliance with the notice provisions as a prerequisite to the filing of criminal charges. This case was certified to us by the Arkansas Court of Appeals, pursuant to Ark. Sup. Ct. R. 1-2(d), because it presents an issue of first impression. We find merit to the State's argument and reverse.

On September 21, 1998, an amended information was filed by the Washington County prosecutor's office charging appellee as a habitual offender for drawing several checks aggregating several hundred dollars between December 18, 1997, and February 1, 1998, knowing at the time that he had insufficient funds on deposit to cover the checks and with the intent to defraud a company out of its property, in violation of Ark. Code Ann. § 5-37-302 (Repl. 1997). At a pretrial hearing held September 21, 1998, appellee orally moved to dismiss the charges against him because he did not receive notice pursuant to Ark. Code Ann. § 5-37-303.

The prosecutor contended that nothing in the statute requires the merchant's giving notice of the dishonor as a prerequisite to prosecution, that the law does not require dismissal of the charges for failure to provide notice, and that Ark. Code Ann. § 5-37-304(a)(2)(B), which provides: "Nothing shall impair the prosecuting attorney's power to immediately file charges after the check has been returned," controls the filing of the information against appellee. According to the State's interpretation, the purpose of the notice provision is to allow the State to use the evidence of failure to pay as *prima facie* evidence of intent to defraud. Arkansas Code Section 5-37-304 provides that it is *prima facie* evidence of intent to defraud if: "Payment was refused by the drawee for lack of funds, upon presentation within thirty (30) days after delivery, and the maker or drawer shall not have paid the holder the amount due, together with a service charge not to exceed

twenty dollars ($20.00), within ten (10) days after receiving written notice that payment was refused upon the check, draft, or order." Ark. Code Ann. § 5-37-304(a)(2)(A)(ii) (Repl. 1997). Appellee claimed that sending notice was a prerequisite to the bringing of a criminal prosecution for violation of the Arkansas Hot Check Law, and that the remedy for failure to give such notice by registered mail, return receipt requested, in substantially the form set out in the code, should be dismissal of the charges.

The trial judge agreed with appellee's contention and dismissed the charges against appellee, ruling that the language of Ark. Code Ann. § 5-37-303 required that the notice be sent to the defendant as a condition precedent to conviction for violation of the Arkansas Hot Check Law. The State brings this appeal of the trial court's ruling, arguing that the trial court erred in dismissing the charges against appellee by finding that the notice provision was a condition precedent to a prosecution under the Arkansas Hot Check Law. Resolution of this issue necessarily requires our construction of the Arkansas Hot Check Law, which is codified at Ark. Code Ann. §§ 5-37-301 — 5-37-307 (Repl. 1997).

We adhere to the basic rule of statutory construction, which is to give effect to the intent of the legislature. In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. If the language of a statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory interpretation. *State Office of Child Support Enforcem't v. Terry*, 336 Ark. 310, 985 S.W.2d 711 (1999).

Section 5-37-303, the "Notice" provisions of the Arkansas Hot Check Law, provides in part:

> (a) For purposes of this section and § 5-37-304, notice that payment was refused by the drawee for lack of funds shall be sent by certified or registered mail, evidenced by return receipt, to the address printed on the instrument or given at the time of issuance, or to the current residence.

(b)  The form of the notice shall be substantially as follows: "You are hereby notified that the check(s) or instrument(s) listed below (has) (have) been dishonored.  Pursuant to Arkansas law, you have ten (10) days from receipt of this notice to tender payment of the total amount of the check(s) or instrument(s), plus the applicable service charge(s) of $ _____ (not to exceed $20.00 per check), the total amount due being $ _____.  Unless this amount is paid in full within the time specified above, the dishonored check(s) or instrument(s) and all other available information relating to this incident may be turned over to the Prosecuting Attorney for criminal prosecution . . ."

Ark. Code Ann. § 5-37-303 (Repl. 1997).

The section immediately following provides:

(a)  For purposes of this section, it is prima facie evidence that the maker or drawer intended to defraud and knew at the time of the making, drawing, uttering, or delivering that the check, draft, or order would not be honored if:

(1)  The maker or drawer had no account with the drawee at the time the check, draft, or order was made, drawn, uttered, or delivered; or

(2)(A)(i)  The check, draft, or order bears the endorsement or stamp of a collecting bank indicating that the instrument was returned because of insufficient funds to cover the value; or

(ii)  Payment was refused by the drawee for lack of funds, upon presentation within thirty (30) days after delivery, and the maker or drawer shall not have paid the holder the amount due, together with a service charge not to exceed twenty dollars ($20.00), within ten (10) days after receiving written notice that payment was refused upon the check, draft, or order.

(B)  Nothing shall impair the prosecuting attorney's power to immediately file charges after the check has been returned.  The prosecuting attorney may collect restitution including a service charge, not exceeding twenty dollars ($20.00) per check, for the payees of the check.

Ark. Code Ann. § 5-37-304 (Repl. 1997).

■ On review of an issue of statutory interpretation, we are not bound by the decision of the circuit court. However, in the absence of a showing that the trial court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. *Bryant v. Weiss*, 335 Ark. 534, 983 S.W.2d 902 (1998)(*citing Hazen v. City of Booneville*, 260 Ark. 871, 545 S.W.2d 614 (1977). In the present case the trial judge found that, despite the plain language of Ark. Code Ann. § 5-37-304(a)(2)(B) that nothing shall impair the prosecutor's power to immediately file charges after the check has been returned, section 5-37-303 required that in order to obtain a judgment of conviction in a proceeding for violation of the Arkansas Hot Check Law, it was necessary for the State or the payee to provide notice of the check's return to the drawer and to give the drawer ten days to tender payment of the check and appropriate fees.

We disagree with the trial court's decision for two reasons. First, the plain language of section 5-37-304, which outlines the various methods by which the State can make a *prima facie* case of violation of the Arkansas Hot Check Law, states that it is *prima facie* evidence of intent to defraud and knowledge that the check would be dishonored if the drawer fails to pay the holder of the check the amount due, plus the service charge, within ten days after receiving written notice that payment was refused. Ark. Code Ann. § 5-37-304(a)(2)(ii).

Section 5-37-307 concerning the crime of knowingly issuing a worthless check provides that:

> (a)   A person commits an offense if he issues or passes a check, order, or draft for the payment of money knowing that the issuer does not have sufficient funds in or on deposit with the bank or other drawee for the payment in full of the check, order, or draft as well as all other checks, orders, or drafts outstanding at the time of issuance . . .
>
> (b)   *This section does not prevent the prosecuting attorney from establishing the required knowledge by direct evidence.* However, for purposes of this section, the issuer's knowledge of insufficient funds is presumed, except in the case of a postdated check, order, or draft, if:

(1) He had no account with the bank or other drawee at the time he issued the check, order, or draft; or

(2) Payment was refused by the bank or other drawee for lack of funds or insufficient funds on presentation within thirty (30) days after issue and the issuer failed to pay the holder in full, plus a service charge not to exceed twenty dollars ($20.00), within ten (10) days after receiving notice of that refusal.

(c) Notice for purposes of this section shall be by the procedure as set forth in §§ 5-37-303 and 5-37-304.

Ark. Code Ann. § 5-37-307 (Repl. 1997)(emphasis added).

■ A plain reading of these statutes supports the State's argument that while notice from the merchant or holder pursuant to § 5-37-303 is required for the State to make a *prima facie* case for violation of the Arkansas Hot Check Law based upon failure to pay a returned check, notice to the drawer of the check is not a prerequisite to the bringing of criminal charges by the State. Section 5-37-307 provides for the prosecutor to prove a violation of the hot check laws wholly apart from sending of notice. Notice under these statutes only allows the State an additional method of making a *prima facie* case if payment is not made after the notice is sent.[1] Even if the notice is not sent, the State can still make its case by direct evidence. This reading is further supported by the introductory language of § 5-37-303 that provides that notice shall be sent by registered mail "for purposes of this section and § 5-37-304." Ark. Code Ann. § 5-37-303(a). Under earlier statutes we have held that notice was not required before making an arrest, *Brewer v. State*, 195 Ark. 477, 112 S.W.2d 976 (1938), and that the State was not required to allege in its indictment that it had complied with the notice provision in order to make a *prima facie* case of intent to defraud based upon dishonor by the drawee. *Collier v. State*, 183 Ark. 1057, 40 S.W.2d 455 (1931). The earlier forms of

---

[1] Although we have not been explicitly asked to decide the question raised below as to who is required to provide the notice at issue, we do observe that the form of the notice at Ark. Code Ann. § 5-37-303 clearly contemplates that the notice be sent by the merchant or holder of the returned check rather than the prosecutor.

the Arkansas Hot Check Law combined the two provisions, clearly establishing that notice was a portion of the requirements for making a *prima facie* case. *See e.g.,* Act 899 of 1983. The 1987 enactment of the new Arkansas Code codified a separate section headed "Notice," but provided that the notice provisions would be read in conjunction with the making of a *prima facie* case of intent to defraud, as indicated by § 5-37-303(a).

■ Secondly, we find particularly compelling the language of § 5-37-304(a)(2)(B), that "Nothing shall impair the prosecuting attorney's power to immediately file charges after the check has been returned." We adhere to the basic rule of statutory construction, which gives effect to the intent of the legislature, making use of common sense and giving words their usual and ordinary meaning. *L.H. v. State*, 333 Ark. 613, 973 S.W.2d 477 (1998). The language of the statute that nothing shall impair the prosecutor's power to immediately file charges after the check has been returned is completely clear.

The appellee gives a number of arguments for upholding the trial court. We dismiss those arguments because the statute is clear, and there is no need for further construction or interpretation of the statute. *See State v. Townsend*, 314 Ark. 427, 863 S.W.2d 288 (1993).

■ ■ The State further requests that the charges against appellee be reinstated, a request that appellant contends violates the constitutional prohibitions against Double Jeopardy. The charges against appellee were dismissed on a pretrial motion of appellee's counsel, and the State should be permitted to refile the information against him. Where a defendant received a favorable trial decision not because the State fails to prove its case, but because the trial court, at the defendant's instigation, mistakenly applied an erroneous interpretation of the law, he suffers no injury cognizable under the Double Jeopardy Clause. Permitting retrial in this instance is not the sort of oppression at which the Double Jeopardy Clause is directed, but instead simply affords the defendant an opportunity to obtain a fair adjudication of his guilt free from error. *State v. Zawodniak*, 329 Ark. 179, 946 S.W.2d 936 (1997).

Reversed and remanded.